Opinion issued December 21, 2006

 













In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00309-CV






In the matter of C.N., a minor child, Appellant






On Appeal from 314th District Court

Harris County, Texas

Trial Court Cause No. 2003-06589J






MEMORANDUM OPINION

 Appellant, a juvenile, appeals from an adjudication of delinquent conduct for
committing aggravated sexual assault of his sister, a child under 14 years old. See
Tex. Pen. Code Ann. § 22.021 (Vernon Supp. 2006). Appellant pleaded not true to
the jury, which found that he had engaged in delinquent conduct. The trial court
sentenced him to seven years in custody of the Texas Youth Commission, with a
possible transfer when he reaches adulthood to the Institutional Division or the
Pardons and Paroles Division of the Department of Criminal Justice when he reaches
adulthood. In two issues, appellant contends that the trial court erroneously excluded
evidence that other individuals had sexually abused complainant, and that it
erroneously admitted inappropriate outcry testimony. We conclude that appellant has
failed to preserve error regarding either issue. We affirm.

Background

 Appellant and complainant were brother and sister, and lived in a house with
their mother and three other siblings. When complainant was six years old, she told
her kindergarten teacher that appellant, then 14, was sexually abusing her. The
teacher immediately reported the abuse to the Child Protective Services Division of
the Texas Department of Family and Protective Services (CPS).

 CPS removed complainant from her mother's care. A CPS caseworker picked
the girl up from school and took her to the Children's Assessment Center, where
physical and psychological forensic examinations were performed. During the
psychological exam, she described to the interviewer sexual abuse by her brother
which began when she was four years old, and included penetration of her anus and
vagina with his penis, as well as oral sex. The physical exam at the assessment
center's clinic yielded no conclusive evidence about the abuse. There was no
evidence of trauma to complainant's anus or genitals, and an anal swab revealed a
DNA mixture that neither confirmed the abuse nor proved conclusively that it did not
occur. 

 After his sister accused him, appellant went to the Children's Assessment
Center to give a DNA sample. Before he gave the sample, while he and his mother
were filling out paperwork with a sheriff's investigator, appellant asked to speak to
the investigator in private, away from his mother. Appellant's mother consented to
the private interview. Once appellant and the investigator were alone, appellant said
"I did it," and that he "did it to his sister." He said that he was ashamed for the pain
and trouble he was causing his family. The investigator could not get appellant to
elaborate further. After the interview was over, appellant gave a saliva sample at the
clinic and went home.

 Before trial, the State moved that the trial court exclude evidence of other
sexual abuse of complainant. At the hearing regarding the motion in limine,
appellant's attorney asserted that he should be allowed to introduce exculpatory
evidence that complainant's mother's boyfriend pleaded guilty "to the same
allegations" because "there is DNA evidence as to other individuals." Appellant's
attorney represented that the lab report taken from anal swabs from complainant
stated that "[t]here is no indication of male DNA on this item." Appellant's attorney
thus asserted that because other people had access to complainant and because
appellant's DNA was not on the swabs taken from complainant, evidence of other
perpetrators was admissible. The trial court granted the motion in limine.

 At trial, the State called complainant to testify to the details of appellant's
abuse. Complainant also said that she told her mother about the abuse, but that her
mother did not understand her. 

 The prosecution called the forensic interviewer, Claudia Mullin, as an outcry
witness to testify to complainant's initial description of the sexual assaults. In
response to the prosecutor's question about whether complainant gave specific
details, Mullin said that the details were very specific, "the kinds of details that a six-year-old, unless they've been involved in sexual activity, usually has no knowledge
of." As examples, she pointed to complainant's description of appellant's ejaculation,
her memory of pain, and her re-enactment of her reaction to his odor. 

 Appellant's trial counsel objected to the interviewer's entire outcry testimony
on the grounds that the State had not given proper notice, because the subpoena list
referred to her as Cecilia Mullin instead of Claudia Mullin. The court overruled this
objection, along with a number of other specific objections throughout Mullin's
testimony to the form of the State's questions and to the witness's responsiveness. 
During Mullin's testimony, the State played excerpts of a videotape of her interview
with complainant. Appellant's trial counsel did not object to the publication of the
videotape to the jury. (1) 

 During cross-examination, appellant's counsel sought to inquire into the
contents of a second videotape, made a month after the first tape, which dealt with
others who abused complainant. The State successfully objected based on the court's
ruling on the State's motion in limine. The court also saw no evidence that
complainant had been coached to identify appellant. Outside the presence of the jury,
Mullin stated for the record that the second tape included complainant's allegations
against other persons, and specifically that her mother's boyfriend "Lalo" did the
same thing to her that appellant did. The trial court did not allow the admission of
extraneous evidence about other perpetrators. In explaining this ruling, the trial court
said that "I've heard nothing that would imply to me that the child was confused in
her ability to identify a particular person or perpetrator." 

 In addition to the outcry witness, the State called psychotherapists who worked
with complainant after the assault. These therapists testified that complainant had
been consistent in her description of the abuse, and described her progress in one-on-one and group therapy. During the testimony of one therapist, the State introduced
a children's book entitled "No More Hurt," a therapeutic tool for counselors working
with young victims of sexual assault. Based on the court's ruling on the motion in
limine, the prosecuting attorney removed a page that referred to another person who
complainant said sexually assaulted her.

 The State also presented medical testimony explaining that, notwithstanding
the absence of trauma to complainant's genitals and the fact that DNA tests
conclusively excluded appellant from the mixture obtained by the anal swab,
complainant's story could still be substantially true. One witness testified that genital
and anal tissue heals quickly, and that examiners generally do not expect to find
trauma in sexual assault victims of complainant's age. Another witness explained the
limitations of DNA testing, and that tests are not intended, in and of themselves, to
prove or disprove culpability for sexual assault, but only the presence or absence of
certain DNA in a particular sample.

 After the close of the State's case-in-chief, appellant sought an instructed
verdict, contending that the State had failed to prove its case beyond a reasonable
doubt; he further asserted that the State had failed to prove up Mullin's status as an
outcry witness, having not provided the teacher to whom complainant originally made
her allegations, or the teacher's statement. (2) The trial court denied the instructed
verdict.

 Before taking the stand himself, appellant called members of his family to
dispute portions of complainant's story. Appellant and complainant's mother, two 
older sisters and older brother contended that certain details of the assault could not
have been as complainant testified. For example, complainant claimed to remember
abuse taking place on her mother's waterbed when, according to her mother, the
family never owned a waterbed. In addition, the family members claimed that
appellant would never have had the opportunity to commit the crime. They also said
that complainant was jealous of appellant's close relationship with their father,
suggesting that this jealousy would give her a motive to falsely accuse appellant.

 When appellant took the stand, he consistently denied having abused
complainant. He said that when he told the sheriff's investigator "I did it," he did not
understand what he was being accused of, and thought that carrying complainant on
his shoulders was sexual assault. He contended that the two of them had only been
in the same bed together once, on a night when she tried to climb into his bed and he
pushed her out with his leg.

 In a bill of exception offered after the jury returned its verdict, appellant's trial
counsel presented evidence, including an indictment and a judgment on the plea, that
complainant's mother's live-in boyfriend was charged with felony sexual assault of
complainant, and that he pleaded to a misdemeanor charge and was deported to
Mexico. Complainant's mother testified that she did not tell interviewers at the
Children's Assessment Center about this previous abuse because she was not asked.

Exclusion of Evidence

 In his first issue on appeal, appellant contends that the court erred by refusing
to admit evidence that another person or persons committed substantially similar
assaults against complainant. Specifically, he asserts that this evidence prevented
him from properly impeaching the credibility of complainant's story, and from
contradicting the State's "theme throughout the entire trial" that complainant knew
details of sexual assault that she would not have known had she not been assaulted. 
The State responds that appellant has failed to preserve this issue for review.

 "[I]t is not enough to tell the judge that evidence is admissible. The proponent,
if he is the losing party on appeal, must have told the judge why the evidence was
admissible." Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005); see also
Tex. R. App. P. 33.1(a)(1)(A) (requiring a timely request that "stated the grounds for
the ruling that the complaining party sought from the trial court with sufficient
specificity to make the trial court aware of the complaint, unless the specific grounds
were apparent from the context"). In order to have preserved error, the proponent of
evidence must have offered the trial court an opportunity to rule on the same grounds
he asserts on appeal. See Reyna, 168 S.W.3d at 179.

 At the beginning of the trial, the State sought a motion in limine that "no
evidence or testimony be elicited with respect to other individuals who the
complainant has made outcries or complaints against[.]" Appellant objected on the
grounds that "the DNA [evidence] was not positive as to my client." Appellant
asserted that evidence that "other individuals at or about the same time that also
molested this little girl . . . [is] exculpatory evidence as relates to my client[.]" Not
persuaded by appellant's argument that the absence of appellant's DNA warranted the
admission of evidence about other perpetrators, the trial court ruled that it would not
allow evidence or testimony of extraneous acts against complainant. Later during the
trial, appellant asserted that evidence of other perpetrators was admissible because
"[t]here are other people that had access to [complainant], other people that
committed the same or similar offenses on this child," and "that goes to my client's
issue of whether or not he's the one that caused the abuse, the injuries, to this child."

 On appeal, appellant contends that the evidence that other people abused
complainant was admissible as impeachment of the State's theories that (1) a young
child such as complainant "could not have fabricated her allegations against appellant
because of the sensory impressions and the body positions which she was able to
describe when talking about appellant's sexual abuse of her," and (2) "a child as
young as [complainant] could not have maintained the same consistency in her
repeated statements to these many people unless they were true." These grounds for
admission of the evidence concerning other perpetrators who sexually assaulted the
complainant were not presented to the trial court. Appellant, at trial, asserted only
that the evidence of other perpetrators was admissible due to the absence of DNA
evidence linking appellant to the complainant and that other people "had access" to
the complainant. 

 We conclude that appellant failed to make the trial court aware of the complaint
that he now asserts on appeal. See Tex. R. App. P. 33.1(a)(1)(A); Reyna, 168 S.W.3d
at 177. His contentions at trial failed to give the trial court an opportunity to rule on
his present assertions. Reyna, 168 S.W.3d at 179. Appellant therefore failed to
preserve this issue, see id., and we hold that appellant has waived any error on
appeal.

 We overrule appellant's first issue.

Outcry Witness

 Appellant contends that the trial court erred in allowing Claudia Mullin to
serve as the State's outcry witness, thus allowing hearsay testimony of complainant's
forensic interview. He points to the teacher and the CPS caseworker as more
appropriate outcry witnesses, because complainant spoke to those two before Mullin
performed a videotaped forensic interview.

 During Mullin's testimony, appellant objected on the grounds that the notice
of the outcry testimony listed the witness as "Cecilia Mullin," rather than properly as
"Claudia Mullin." Appellant also objected at various times during Mullin's testimony
on the grounds that her testimony was too general, narrative, and non-responsive. 
Twice, appellant objected to the State's questions as leading. After the conclusion
of Mullin's testimony, in his motion for an instructed verdict, appellant asserted that
Mullin was not the appropriate outcry witness, and that the State ought to have called
the teacher to whom complainant originally made her allegations.

 To preserve error for appeal, trial counsel's objection must be timely. Tex. R.
App. P. 33.1(a)(1) ("complaint was made to the trial court by a timely request,
objection, or motion"). A timely objection is one made "at the earliest opportunity
or as soon as the ground of objection becomes apparent." Penry v. State, 903 S.W.2d
715, 763 (Tex. Crim. App. 1995). Although he challenged Mullin's testimony on
other grounds, appellant did not object to her status as an outcry witness on the
grounds that the teacher was the more appropriate outcry witness until the end of the
State's case, in his motion for an instructed verdict. We hold that appellant did not
timely object to the State's outcry witness, and therefore waived any error on appeal. 
See id. 

 We overrule appellant's second issue.

Conclusion

 We affirm the judgment of the trial court. 



 Elsa Alcala

 Justice


Panel consists of Chief Justice Radack, Justice Alcala and Justice Bland.


1. Appellant's trial counsel requested that the whole tape be played instead of excerpts. 
The trial court allowed the State to play the edited version of the tape, but told
appellant that he would be allowed to play the entire tape later. At the beginning of
cross-examination of Ms. Mullin, appellant played the remainder of the tape.
2. The teacher moved to South America, and could not be located by the District
Attorney's office.