

NUMBER 13-11-00370-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

---

JOE CECILIO VILLARREAL JR.,                          Appellant,

v.

THE STATE OF TEXAS,                                   Appellee.

---

On appeal from the 377th District Court
of Victoria County, Texas.

---

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez

Appellant, Joe Cecilio Villarreal Jr., was convicted of murder, *see* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011), a first-degree felony, and intoxication assault, *see id.* § 49.07 (West 2011), a third-degree felony enhanced to a second-degree felony.[1]  Appellant was sentenced to sixty years for the murder and ten years for the

---

[1] The jury found that appellant was a repeat felony offender.  *See* TEX. PENAL CODE ANN. § 12.42 (West Supp. 2011).

intoxication assault, and the sentences were ordered to run concurrently. By one issue, appellant contends that during the punishment phase of the trial, the trial court improperly prevented his trial counsel from eliciting "background evidence that illuminates aspects of [his] life helpful to the jury in fairly assessing punishment." We affirm.

## I. BACKGROUND

During the punishment phase of trial, appellant presented testimony from, among others, Larry Helms, Russell Cain, and Marilyn Tranel.[2] While Helms was testifying, the State objected, arguing that Helms had not known appellant prior to the criminal offenses and that appellant was attempting to elicit improper character evidence. The trial court instructed defense counsel to confine his questioning to Helms' knowledge of appellant's reputation. Defense counsel agreed. The prosecutor further objected, stating that he did not believe that Helms could testify regarding appellant's reputation. The trial court disagreed and stated that if the witness answered that he was aware of appellant's reputation, the witness would be allowed to testify regarding appellant's reputation.

When asked if he was familiar with appellant's reputation, Helms replied that it was "a difficult question to answer" and stated, "He served in our church, came to church on a regular basis. We greeted each other in the lobby. My interaction with him seemed to be a strong person of faith." Appellant's trial counsel asked Helms how he came to that conclusion and Helms said, "Him stopping and talking to me coming in and out of church each week." Trial counsel asked, "Does [appellant] have a reputation in

---

[2] In the record, this witness is identified as "Marilyn Tramel" and "Marilyn Tramer"; however, the witness introduced herself as "Marilyn Tranel" during her testimony.

2

your church as being someone there that—someone that is there regularly?" Helms responded, "Yes, sir." The trial court interjected, stating that although he would allow the testimony to be admitted, trial counsel was eliciting improper character evidence. Defense counsel finished his examination of Helms, passed the witness, and the State cross-examined him. Defense counsel and the State excused Helms as a witness.

Russell testified next, stating that he had known appellant and his wife for about a year and a half. The State objected on the basis that Russell had only known the appellant after the offenses were committed. The prosecutor stated, "I don't think any character evidence is relevant in this case." The trial court replied that Russell could testify about appellant's reputation but would not be allowed to testify regarding "specific acts of character."

After Russell's testimony, defense counsel asked for a hearing outside the presence of the jury, and the trial court complied. During the hearing, defense counsel stated that he wished to "submit a bill of what and proffer what" he anticipated each witness would testify about concerning appellant's reputation. Defense counsel explained that he was not asking that the trial court admit "specific acts" but that he was merely requesting admission of "reputation evidence of who he is." The prosecutor argued that pursuant to rule 405(a), he objected to any character evidence "from a witness who does not know the basis of that reputation prior to the day of the offense or didn't form their opinion about [appellant] prior to the day of the offense." *See* TEX. R. EVID. 405. The prosecutor agreed that "more leeway" should be given to any witness who knew appellant prior to the offenses, but that he was objecting to any character evidence "from a witness who either they didn't hear about [appellant's] reputation prior

3

to the day of the offense[s] and didn't form their own opinion of [appellant's] character prior to the date of the offense[s]." Defense counsel stated that he did not disagree with "the [prosecutor's] interpretation of either rule he referenced" but that he understood the trial court's ruling to be that he could not ask the witnesses "anything other than his reputation as a law-abiding citizen and can't go past that." The trial court stated, "I think that's what that Rule says. Well, no. No. No. . . . You can't go past that unless he brings it up on cross examination."

Defense counsel objected to the trial court's limitation on his questioning the witnesses and "proffered a bill about what each witness [would] testify to." Defense counsel then stated the following:

> Your Honor, with regard to [Helms] who has already testified, I would have proffered that he would have talked about [appellant's] reputation in the church and reputation for how that affects his ability to follow the law.
>
> I would also tender to the [trial] court that he was prepared to testify about [appellant's] faith and how that causes him—his actions under the law in the State of Texas. Next, we would call Danny Pena and Danny Pena is prepared to testify about [appellant's] community involvement.[3]
>
> . . . .
>
> He's going to talk about his work ethic, how he helps, his law-abiding nature is to help those around him and those in need and the general character of [appellant].
>
> . . . .
>
> He's not going to talk about any specific act. He's going to talk about a general trait, that he's willing to do whatever is needed for others. I would next call Cheri Cain. [She] has known [appellant] for twelve years. She's familiar with him in the community and his reputation in the community and she's going to talk about that.

---

[3] Danny Pena did not testify at the punishment phase of appellant's trial.

The prosecutor stated that he had no objection to Cheri's testimony.

The trial court reminded defense counsel that he was not allowed to elicit character evidence and that he could elicit testimony regarding appellant's reputation. The trial court also reiterated that defense counsel should not ask about specific acts and clarified that defense counsel could ask questions regarding what other people thought about appellant.

## II. DISCUSSION

On appeal, appellant does not specify what admissible evidence the trial court excluded and only generally cites to the hearing held outside the presence of the jury. Thus, we will assume that appellant complains of the exclusion of the testimony offered by defense counsel in the hearing outside the jury's presence. During that hearing, defense counsel stated that Helms would talk about appellant's "reputation in the church and reputation for how that affects his ability to follow the law." The trial court did not specifically exclude this evidence, but instead told defense counsel he would be limited to asking questions regarding appellant's reputation and would not be allowed to inquire into specific acts.

The proponent of the evidence must tell the trial court why the evidence is admissible. *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) ("The basis for party responsibility is, among other things, Appellate Rule 33.1. It provides that as a prerequisite to presenting a complaint for appellate review, the record must show that the party 'stated the grounds for the ruling that [he] sought from the trial court with sufficient specificity to make the trial court aware of the complaint.' So it is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on

5

appeal, must have told the judge why the evidence was admissible."); *Martinez v. State*, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002) ("Thus, the party complaining on appeal (whether it be the State or the defendant) about a trial court's admission, exclusion, or suppression of evidence 'must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule [or statute] in question and its precise and proper application to the evidence in question.'") (citations omitted). Here, appellant did not tell the trial court what specific acts Helms would relate during his testimony.  He also did not state the basis for the admission of those specific acts. Therefore, error, if any, by the trial court in limiting Helm's testimony regarding specific acts is not preserved for our review.  *See Reyna*, 168 S.W.3d at 176; *Martinez*, 91 S.W.3d at 335–36.

However, regarding Helms' testimony about appellant's faith, even assuming without deciding, that the trial court should have allowed such testimony, we conclude that the error, if any, was harmless because we are convinced beyond a reasonable doubt that the trial court's ruling made no contribution to the jury's determination of appellant's sentence.  *See Smith v. State*, 919 S.W.2d 96, 102–103 (Tex. Crim. App. 1996) (plurality opinion) (finding that the error in admitting victim impact evidence during the punishment phase was harmless beyond a reasonable doubt).  The trial court allowed appellant to present evidence of appellant's good reputation.  During closing argument, defense counsel stated that appellant was a good person and that everyone who had encountered appellant had testified that appellant was a good and hard-working person.

During its closing argument, the State acknowledged that appellant is a "nice guy." The State, however, pointed out that appellant killed his victim after driving his vehicle with a blood alcohol level of .27. Also, the State presented ample evidence at the punishment phase of the trial regarding appellant's criminal history, including that: (1) appellant had pleaded guilty to felony driving while intoxicated on April 5, 2001 and was sentenced to three years' incarceration; (2) appellant was convicted of "driving while intoxicated subsequent offense" on August 4, 1992 and was placed on community supervision for a period of five years that was extended for two years; (4) appellant had pleaded guilty to the felony offense of operating a motor vehicle while intoxicated on June 26, 1990 and had been sentenced to forty-five days' confinement with his license suspended for one year; (5) appellant was indicted by a grand jury on January 20, 1989 for the offense of driving while intoxicated on December 18, 1988; and (6) appellant had been convicted of driving and operating a motor vehicle in a public place while intoxicated on February 12, 1987 and on October 12, 1982. Finally, the State told the jury that it was irrelevant that appellant was a "nice guy" because appellant "continued to put our community at danger [sic] his entire adult life until he finally, finally he killed somebody." The State averred that although appellant probably did not intend to kill anyone, he "knew it was going to be a possibility when he kept doing the same conduct over and over and over again."

The trial court allowed defense counsel to question Helms regarding appellant's reputation in the church and his record of attendance. Helms testified that appellant had "served" in their church and went to church on a regular basis. He further stated that appellant was "a strong person of faith" and had a reputation of being at church

7

regularly.  Defense counsel did not ask Helms any questions regarding appellant's ability to follow the law, and the trial court did not prevent defense counsel from asking such a question.  Therefore, to the extent that appellant complains on appeal that the trial court prevented him from asking Helms such a question; we conclude that this complaint is also without merit.  *See* TEX. R. APP. P. 33.1 (providing that to preserve error, the defendant must make a timely request or objection and obtain a ruling from the trial court).

Furthermore, under rule 103, reviewable error "may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."  TEX. R. EVID. 103(a).  Here, appellant has not shown that the exclusion of Helms' testimony regarding appellant's faith affected a substantial right.  *See id.* Finding no harm, we overrule appellant's sole issue.

Finally, as a sub-issue, appellant asserts that the trial court limited Tranel's testimony based on the State's objections, which "interrupted the flow of mitigating testimony."  Appellant has not presented a clear and concise argument with citation to appropriate authority in support of this assertion.  *See id.* R. 38.1(i).  Therefore, we conclude that it is inadequately briefed.  We overrule appellant's sub-issue.

### III.    CONCLUSION

We affirm the trial court's judgments.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
19th day of July, 2012.